(51 South. 294.)

No. 17,858.

TEXAS & P. RY. CO. v. W. K. HENDERSON IRON WORKS & SUPPLY CO.

(Jan. 31, 1910.)

*(Syllabus by the Court.)*

EMINENT DOMAIN (§ 196*)—NECESSITY OF EXPROPRIATION—EVIDENCE.

Plaintiff railway brought suit to expropriate the corner of a lot on which the defendant had commenced laying the foundations of a concrete building. The defendant specially denied the necessity of the expropriation, for the reason that the defendant could obtain all necessary space for clearance purposes by a rearrangement of its tracks. After hearing the evidence and inspecting the locus in quo, the jury found a verdict for the defendant.

*Held,* that the evidence tending to show the necessity of the expropriation is not of such a convincing nature as to warrant the reversal of the verdict.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 531; Dec. Dig. § 196.*]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by the Texas & Pacific Railway Company against the W. K. Henderson Iron Works & Supply Company. Verdict for defendant, and plaintiff appeals. Affirmed.

Wise, Randolph & Rendall, for appellant. Herndon & Herndon and Alexander & Wilkinson, for appellee.

LAND, J. Plaintiff sued to expropriate a few square feet of ground off the corner of defendant's lot for clearance space. For a number of years plaintiff's track has curved around said corner, and has been operated in the usual manner. About three years ago, defendant erected a wooden building on the lot for the purpose of its business, and the corner in question was covered by this structure. Five feet of space intervened between the inside rail of the track and the said building.

On July 2, 1909, defendant entered into a written contract which was duly recorded, for the construction of a reinforced concrete building several stories in height on the lot in question. The contract stipulated that the wooden building should be removed by the contractor. This was done, and the contractor was engaged in opening trenches for the foundations of the new building, when this suit was instituted. It is evident that plaintiff took advantage of the demolition of the old building to institute this suit to expropriate the ground as vacant, or, as alleged, without buildings or improvements.

Defendant specially pleaded that the plaintiff had no franchise to use Commerce street, and specially denied the necessity for the expropriation, and in the alternative prayed for judgment for $9,000 for the value of the property taken and damages to the lot and building. It appears that the building was partly completed at the date of the trial of the suit.

The jury, after inspecting the locus in quo, and hearing the evidence, argument of counsel, and charge of the court, found a verdict for the defendant, rejecting plaintiff's demand.

Plaintiff has appealed from the judgment rendered pursuant to the verdict of the jury.

In 1882 a franchise was granted by the city council of Shreveport to the New Orleans Pacific Railroad Company to construct and operate its road from its terminus at Market street to the foot of Commerce street, thence down said street to its intersection with Travis street, provided that said company should not use for the tracks exceeding 20 feet in width along the center of said street.

It appears that the same company in 1881 had obtained from Mr. John R. Jones a grant of a right of way 60 feet in width through seven lots (not named) in block 55 of the city of Shreveport. The company built its track through the block on a curve, and entered Commerce street at a point 5 feet from the corner of lot 12.

All the rights and franchises of said company passed to the Texas & Pacific Railway, which in 1886 obtained an extension of the franchise on Commerce street.

With the growth of the city of Shreveport and the advent of other railroads, it became necessary to rearrange the tracks on Commerce street, and this appears to have been done by common consent.

It therefore appears that the plaintiff railway has a franchise in Commerce street.

The next special defense, which was sustained by the verdict, is more serious.

The present situation is due to the original mistake of the New Orleans Railway Company as to the lots included in the grant from Jones, or that company deliberately constructed its track scant 5 feet distant from the corner of lot 12, then owned by defendant's author.

It appears that the plaintiff company for more than two years operated its trains on the curve around the corner of defendant's wooden building, and that no accident happened to cars or to persons. Defendant's president testified that on one occasion a door of a fruit car opening outward struck the corner of the building. It seems that the door must have been negligently left open by some servant of the plaintiff company.

The clearance is 5 feet from the nearest rail. All the engineers consider such a clearance as too narrow for the safe operation of trains.

The city engineer testified that the plaintiff company, by changing the location of its track, could obtain more clearance than by expropriating the corner of defendant's lot, and he filed a map showing how the tracks could be rearranged so as to accomplish the purpose.

Mr. Jenkins, civil engineer, witness for the plaintiff, testified that according to Wilson's map the connection would be made with the Cotton Belt track, and that to make a connection with the Texas & Pacific track in the center of Commerce street the curvature would have to be increased to about 20 degrees, and that such a curvature would affect the speed and lower the hauling power of the engine, and increase the danger of derailment. The same witness testified that by shifting the tracks further up Commerce street the extreme curvature could be reduced below 20 degrees, if the city would allow the tracks to be changed.

Several railroad engineers testified that the proposed change of tracks would be impracticable as a business proposition. We assume that they refer to a direct connection with the Texas & Pacific track mentioned by Mr. Jenkins, who said that "cars stand there," and he does not know that it is used for any other purpose.

Mr. Wilson testified that the present curve at the corner of defendant's lot is from 15.3 to 16 degrees, and that the curvature on his map varies from 10 to 16 degrees.

Mr. Wilson is an experienced railroad engineer. Mr. Jenkins, with a like experience, testified, as to the map of Wilson, that it might necessitate a change of crossings, and shows a curve into the Cotton Belt track, instead of into the Texas Pacific track. Mr. Chamberlain, assistant chief engineer of the plaintiff railway, testified that its tracks connected in Commerce street with the Red River Valley, the Kansas City Southern, and the Cotton Belt, and that plaintiff's trains are operated over a certain interchange track that connects the Cotton Belt and the Texas Pacific. Mr. Wilson mistook the Cotton Belt track for the Texas & Pacific, and much of the testimony is directed to showing the impracticability of a direct connection with the track of the latter. Mr. Jenkins did not dispute the curvature figures of Mr. Wilson, which show little or no difference between the curves of the present track and those of the proposed track. A connection with the Cotton Belt will serve the same purpose as one with the Texas Pacific. The evidence of the necessity of the expropriation sought is not convincing. Mere inconvenience will not warrant the expropriation of private property.

On a careful review of the evidence, we are not prepared to reverse the verdict as manifestly erroneous.

Judgment affirmed.